IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

|  |  |
|---|---|
| IN RE: | CASE NO. 24-21153-jrs |
| ANNA ALICIA BYINGTON AKA ANNA BYINGTON AKA ANNA A BYINGTON AKA ANNA GENTRY AKA ANNA ALICIA GENTRY AKA ANNA A GENTRY, | CHAPTER:  13 |
|  | JUDGE:  JAMES R. SACCA |
| Debtor. |  |
| NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING, | CONTESTED MATTER |
| Movant, |  |
| v. |  |
| ANNA ALICIA BYINGTON AKA ANNA BYINGTON AKA ANNA A BYINGTON AKA ANNA GENTRY AKA ANNA ALICIA GENTRY AKA ANNA A GENTRY, Debtor NANCY J. WHALEY, Trustee, |  |
| Respondent(s). |  |

## NOTICE OF HEARING

PLEASE TAKE NOTICE that **NewRez LLC d/b/a Shellpoint Mortgage Servicing** has filed a Motion for Relief from the Automatic Stay and related papers with the Court seeking an Order Granting Relief from the Automatic Stay.

PLEASE TAKE FURTHER NOTICE that the Court will hold a hearing on the **Motion for Relief from the Automatic Stay** at 9:00 A.M., on April 24th, 2025 in Courtroom 103, United States Courthouse, 121 Spring St. S.E. Gainesville, Georgia 30501, which may be attended in person or via the Court's Virtual Hearing Room. You may join the Virtual Hearing Room through the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the homepage of the Court's website, www.ganb.uscourts.gov, or the link on the judge's webpage, which can also be found on the Court's website. Please also review the "Hearing Information" tab on the judge's webpage for further information about the hearing. You should be prepared to appear at the hearing via video, but you may leave your camera in the off position until the Court instructs otherwise. Unrepresented persons who do not have video capability may use the telephonic dial-in information on the judge's webpage.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleadings with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk before the hearing. The address of the Clerk's Office is Clerk, U.S. Bankruptcy Court, 121 Spring SE #120 Gainesville, GA 30501. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the Motion cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the Motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated: April 1, 2025

Eric Smith, Bar No.: 347001
Attorney for Movant
Aldridge Pite, LLP
Six Piedmont Center
3525 Piedmont Road, N.E., Suite 700
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: esmith@aldridgepite.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| IN RE:<br><br>ANNA ALICIA BYINGTON AKA ANNA BYINGTON AKA ANNA A BYINGTON AKA ANNA GENTRY AKA ANNA ALICIA GENTRY AKA ANNA A GENTRY,<br><br>Debtor. | CASE NO. 24-21153-jrs<br><br>CHAPTER:  13<br><br>JUDGE:  JAMES R. SACCA |
| NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING,<br><br>Movant,<br>v.<br><br>ANNA ALICIA BYINGTON AKA ANNA BYINGTON AKA ANNA A BYINGTON AKA ANNA GENTRY AKA ANNA ALICIA GENTRY AKA ANNA A GENTRY, Debtor NANCY J. WHALEY, Trustee,<br><br>Respondent(s). | CONTESTED MATTER |

MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW Movant named above and shows this Court the following:

1.      This Motion is made pursuant to Section 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed by law and the contract between the parties, including, but not limited to, the right to foreclose on certain real property by a private power of sale contained in a certain Security Deed.

2.      Movant is the holder or the servicer of a loan secured by certain real property in which the Debtor has an interest. Said real property is security for a Promissory Note, and is commonly known as 10 White Oak Dr, Ellijay, Georgia 30540.

3.      The Security Deed has been assigned to Movant as evidenced by an assignment of record.

4.      There has been a default in mortgage payments which have come due since this case was filed. As of March 25, 2025, the total default is $3,668.96, which consists of, three (3) post-petition payments of $1258.16 each (1/1/2025 to 3/1/2025), less suspense of $105.52.

5.      As of March 25, 2025, the unpaid principal balance is $203,134.00, and interest is due thereon in accordance with the Promissory Note.

6.      Because of the default and clear inability to make all required payments, Movant is not adequately protected.

7.      Because the Loan Documents so provide, Movant is entitled to reasonable attorney's fees.

8.      Movant requests that in the event the Motion is granted, the Trustee be ordered to cease funding any balance of Movant's claim.

9.      Movant requests that the provisions of Fed. R. Bankr. P 4001(a)(3) be waived.

10.     NewRez LLC dba Shellpoint Mortgage Servicing services the underlying mortgage loan and note for the property referenced in this motion for Movant.  In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the Note.  The Note is endorsed in blank.  Movant is the beneficiary or the assignee of the Deed of Trust.

WHEREFORE, Movant prays for an Order lifting the automatic stay, authorizing it to proceed with the exercise of its private power of sale and to foreclose under its Loan Documents and appropriate state statutes, and for an award of reasonable attorney's fees.  Movant also prays

that Fed. R. Bankr. P. 4001(a)(3) be waived. Movant also prays that the Chapter 13 Trustee make

no further payments on account of Movant's secured claim, that Movant be permitted to contact

the Debtor or Debtor's Counsel, as appropriate, through its agents, servicers and representatives

for the purpose of engaging in discussions and consideration for possible loss mitigation options,

and for such other and further relief as is just and equitable.

Eric Smith, Bar No.: 347001
Attorney for Movant
Aldridge Pite, LLP
Six Piedmont Center
3525 Piedmont Road, N.E., Suite 700
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: esmith@aldridgepite.com

## NOTE

June 2, 2021
[Date]

Ellijay,
[City]

Georgia
[State]

**10 White Oak Dr, Ellijay, GA 30540**
**[Property Address]**

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$216,015.00**      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Homestar Financial Corp., a Corporation.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **3.125 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st**      day of each month beginning on **July 1, 2021.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and any other items in the order described in the Security Instrument before Principal. If, on **June 1, 2051,**      I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **332 Washington St. NW**
**Gainesville, GA 30501**
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$925.36.**

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
Modified for FHA 9/15 (rev. 2/16)
Ellie Mae, Inc.                                    Page 1 of 2

06/01/2021 02:01 PM PST

interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____  6/2/21 _____ (Seal)
**ANNA ALICIA GENTRY**

Pay To The Order Of
Caliber Home Loans, Inc.

Without Recourse
**Homestar Financial Corporation**

Carolyn Davidson, Vice President
Texas Capital Bank, NA
As Attorney-In-Fact

[Sign Original Only]

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
Modified for FHA 9/15 (rev. 2/16)
Ellie Mae, Inc.                                          Page 2 of 2

06/01/2021 02:01 PM PST

## ALLONGE

**Loan Number:** █████████

**Borrower:**     **Anna Alicia Gentry**

**Loan Amount:**     $216,015.00

**Property Address: 10 White Oak Dr**

**Ellijay, GA 30540**

**Allonge to Note Dated:  06/02/2021**

### PAY TO THE ORDER OF

### Caliber Home Loans, Inc.

### WITHOUT RECOURSE

**Homestar Financial Corp., a Corporation**
**Company Name**

**By:** _____
**Signature**

**Abraham Ortiz**
**Printed Name**

**Its:**   **Post-Closer**_____
**Title**

HFC PC ALLONGE

# ALLONGE TO THE NOTE

CALIBER LOAN#:

SELLER LOAN #:

NOTE DATE:               06/02/2021

MORTGAGOR (S):           Anna Alicia Gentry

PROPERTY ADDRESS:        10 White Oak Dr
                         ELLIJAY
                         GA 30540

LOAN AMOUNT:             $216,015

Without Recourse,

PAY TO THE ORDER OF:

CALIBER HOME LOANS, INC.

Jill McQuillan / VP Operations

CLIFFORD S. LANCEY, P.C.
ATTORNEY AT LAW
15 NORTH AVENUE
ELLIJAY, GA 30540
706-276-2233
FILE NO. RE 21-18203

eFiled & eRecorded
DATE: 6/15/2021
TIME: 2:40 PM
DEED BOOK: 02392
PAGE: 00416 - 00436
RECORDING FEES: $25.00
INTANGIBLE TAX: $649.50

CLERK: Amy Johnson
Gilmer County, GA
NOTE: LD

When recorded, return to:
Homestar Financial Corp.
Attn: Final Document Department
332 Washington St. NW
Gainesville, GA 30501

——————[Space Above This Line For Recording Data]————————————

## SECURITY DEED



DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A) "Security Instrument" means this document, which is dated   June 2, 2021,       together with all Riders to this document.
(B) "Borrower" is   ANNA ALICIA GENTRY, UNMARRIED WOMAN.

Borrower is the grantor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is   Homestar Financial Corp..

Lender is  a Corporation,                                    organized and existing under the laws of.  Georgia.
Lender's address is   332 Washington St. NW , Gainesville, GA 30501.

GEORGIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3011 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)                               Initials: _____
Ellie Mae, Inc.                              Page 1 of 10
06/01/2021 02:01 PM PST

eFiled & eRecorded
DATE: 6/15/2021
TIME: 2:40 PM
DEED BOOK: 02392
PAGE: 00417

EXHIBIT "A"

All that tract or parcel of land lying and being in the 12th District and 2nd Section of Gilmer County, Georgia, and being part of Original Land Lot Nos. 1 and 36, and being designated as Tract No. 7, containing 1.44 acres, as shown on plat of survey of White Oak Hills Subdivision, Phase II. Said plat dated July 26, 1988, by N. B. DeLoach, GRLS No. 1347, is recorded in Plat Book 17, page 26, Gilmer County, Georgia records; which reference is made for the purpose of incorporating the same as a part herein; together with an improvement and immovable fixture permanently attached thereto, a 2021 TRU MH MODEL ▮▮▮▮▮▮▮ Mobile Home, Identification Number CWP048406TN-AB being Real Property.

eFiled & eRecorded
DATE: 6/15/2021
TIME: 2:40 PM
DEED BOOK: 02392
PAGE: 00418

(E) "Note" means the promissory note signed by Borrower and dated **June 2, 2021.**      The Note
states that Borrower owes Lender **TWO HUNDRED SIXTEEN THOUSAND FIFTEEN AND NO/100\* \***
**\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*** Dollars (U.S. **$216,015.00**    )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt
in full not later than: **June 1, 2051.**
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, late charges due under the Note, and
all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:
☐ Adjustable Rate Rider      ☐ Condominium Rider      ☐ Planned Unit Development Rider
☒ Other(s) [specify]
  **Waiver of Borrower's Rights Rider, Manufactured Home Rider, Manufactured Home
  Affidavit of Affixation**

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and
other charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instru-
ment, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or
credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds
paid by any third party (other than insurance proceeds paid under the coverages described in Section 5)
for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of
the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to,
the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default
on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under
the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its imple-
menting regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any
additional or successor legislation or regulation that governs the same subject matter. As used in this Security
Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally
related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q) "Secretary" means the Secretary of the United States Department of Housing and Urban Develop-
ment or his designee.
(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether
or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions
and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under
this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS
(solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of
MERS, with power of sale, the following described property located in the   **County**
                                                                                      [Type of Recording Jurisdiction]

of   **Gilmer**
     [Name of Recording Jurisdiction]:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".
APN #: ▮▮▮▮▮▮▮

GEORGIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3011 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                         Page 2 of 10                     Initials: A-G



08/01/2021 02:01 PM PST

eFiled & eRecorded
DATE: 6/15/2021
TIME: 2:40 PM
DEED BOOK: 02392
PAGE: 00419

which currently has the address of   10 White Oak Dr, Ellijay,

[Street] [City]

Georgia  30540       ("Property Address"):
  [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.   Payment of Principal, Interest, Escrow Items, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.
2.   Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:
First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;
Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;
Third, to interest due under the Note;
Fourth, to amortization of the principal of the Note; and,
Fifth, to late charges due under the Note.
Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.
3.   Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These Items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this

GEORGIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3011 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                          Page 3 of 10

Initials:

06/01/2021 02:01 PM PST

eFiled & eRecorded
DATE: 6/15/2021
TIME: 2:40 PM
DEED BOOK: 02392
PAGE: 00420

Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

5.   Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower

GEORGIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3011 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                                Page 4 of 10
Initials: _____

06/01/2021 02:01 PM PST

eFiled & eRecorded
DATE: 6/15/2021
TIME: 2:40 PM
DEED BOOK: 02392
PAGE: 00421

acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 24 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights

GEORGIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3011 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                                Page 5 of 10

Initials: _____



eFiled & eRecorded
DATE: 6/15/2021
TIME: 2:40 PM
DEED BOOK: 02392
PAGE: 00422

under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by

GEORGIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3011 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                   Page 6 of 10

Initials:



eFiled & eRecorded
DATE: 6/15/2021
TIME: 2:40 PM
DEED BOOK: 02392
PAGE: 00423

Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

12. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

13. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

14. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

15. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

16. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

17. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written

GEORGIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3011 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                     Page 7 of 10

Initials: _____

06/01/2021 02:01 PM PST

eFiled & eRecorded
DATE: 6/15/2021
TIME: 2:40 PM
DEED BOOK: 02392
PAGE: 00424

consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

19. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

20. **Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

GEORGIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3011 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                    Page 8 of 10

Initials: _____

06/01/2021 02:01 PM PST

eFiled & eRecorded
DATE: 6/15/2021
TIME: 2:40 PM
DEED BOOK: 02392
PAGE: 00425

**22. Grounds for Acceleration of Debt.**

(a) Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

23. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Section 23.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

24. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 24, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

GEORGIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3011 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                        Page 9 of 10                    Initials:

08/01/2021 02:01 PM PST

eFiled & eRecorded
DATE: 6/15/2021
TIME: 2:40 PM
DEED BOOK: 02392
PAGE: 00426

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 24, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Section 22, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Section 24 or applicable law.

25. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

26. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

27. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

28. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____  6/2/21 _____ (Seal)
ANNA ALICIA GENTRY                                    DATE

_____
Unofficial Witness

_____
Notary Public,
GILMER County

GEORGIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3011 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                     Page 10 of 10                Initials: _____

06/01/2021 02:01 PM PST

eFiled & eRecorded
DATE: 6/15/2021
TIME: 2:40 PM
DEED BOOK: 02392
PAGE: 00427

## WAIVER OF BORROWER'S RIGHTS RIDER

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

_____ 6/2/21 _____ (Seal)
ANNA ALICIA GENTRY                                          DATE

Ellie Mae, Inc.


06/01/2021 11:19 AM PST

eFiled & eRecorded
DATE: 6/15/2021
TIME: 2:40 PM
DEED BOOK: 02392
PAGE: 00428



## MANUFACTURED HOME RIDER TO THE MORTGAGE/ DEED OF TRUST/TRUST INDENTURE OR OTHER SECURITY INSTRUMENT

This Rider is made this **2nd** day of **June, 2021** and is incorporated into and shall be deemed to amend and supplement the Mortgage/Deed of Trust/Trust Indenture or Other Security Instrument (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **Homestar Financial Corp., a Corporation**

(the "Note Holder")

of the same date (the "Note") and covering the property described in the Security Instrument and located at **10 White Oak Dr, Ellijay, GA 30540**

(Property Address)

LEGAL DESCRIPTION:
**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**
APN #:

MODIFICATIONS: In addition to the covenants and agreements made in the Security Instrument, Borrowers and Note Holder further covenant and agree as follows:

A. PROPERTY:
Property, as the term is defined herein, shall also encompass the following manufactured home (the "Manufactured Home"):
New __x__ Used _____ Year **2020** Length **69** Width **27**
Manufacturer/Make **CMH Manufactured**
Model Name or Model No
Serial No.
Serial No.
Serial No.
Serial No.
Certificate of Title Number _____ ☒ No Certificate of Title has been issued.

B. ADDITIONAL COVENANTS OF BORROWER:
(a) Borrower(s) covenant and agree that they will comply with all state and local laws and regulations regarding the affixation of the Manufactured Home to the real property described herein including, but not limited to, surrendering the Certificate of Title (if required) and obtaining the requisite governmental approval and executing any documentation necessary to classify the Manufactured Home as real property under state and local law.

Initials: _____

Ellie Mae, Inc.                          Page 1 of 2

06/01/2021 11:19 AM PST



eFiled & eRecorded
DATE: 6/15/2021
TIME: 2:40 PM
DEED BOOK: 02392
PAGE: 00429

(b) That the Manufactured Home described above shall be, at all times, and for all purposes, permanently affixed to and part of the real property legally described herein.

(c) Borrower(s) covenant that affixing the Manufactured Home to the real property legally described herein does not violate any zoning laws or other local requirements applicable to manufactured homes and further covenant that the Manufactured Home has been delivered and installed to their satisfaction and is free from all defects.

C.  RESPONSIBILITY FOR IMPROVEMENTS:
Note Holder/Lender shall not be responsible for any improvements made or to be made, or for their completion relating to the real property, and shall not in any way be considered a guarantor of performance by any person or party providing or effecting such improvements.

D.  INVALID PROVISIONS:
If any provision of this Security Instrument is declared invalid, illegal or unenforceable by a court of competent jurisdiction, then such invalid, illegal or unenforceable provisions shall be severed from this Security Instrument and the remainder enforced as if such invalid, illegal or unenforceable provision is not a part of this Security Instrument.

By signing this, Borrower(s) agree to all of the above.

_____  6/2/21 _____ (Seal)
ANNA ALICIA GENTRY                                                      DATE

Ellie Mae, Inc.                          Page 2 of 2                  Initials: A-G

06/01/2021 11:19 AM PST

eFiled & eRecorded
DATE: 6/15/2021
TIME: 2:40 PM
DEED BOOK: 02392
PAGE: 00430

This document was prepared by:
Homestar Financial Corp.
332 Washington St. NW
Gainesville, GA 30501
770-503-0380

## MANUFACTURED HOME AFFIDAVIT OF AFFIXATION RIDER

STATE OF  GA

COUNTY OF  Gilmer

This Manufactured Home Affidavit of Affixation is made this  2nd          day of
June, 2021          and is incorporated into and shall be deemed to supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date
given by the undersigned (the "Borrower" or "Homeowner") to secure Borrower's Note to
Homestar Financial Corp., a Corporation

("Lender").

Borrower and Lender state that it is their intent that the manufactured home be and
remain permanently attached to and part of the real property, and that it be regarded
as an immovable fixture thereto and not as personal property.

"Homeowner" being duly sworn, on his, her or their oath state(s) as follows:

1.  Homeowner owns the manufactured home ("Home") described as follows:

New  X          Used          Year  2020          Length 69          Width 27

Manufacturer/Make   CMH Manufactured

Model Name or Model No.  36tru28684rh21

Serial No.

Serial No.

Serial No.

Serial No.

HUD Label Number(s)  TEN920408/TEN920409

Certificate of Title Number

ATTENTION COUNTY CLERK: This instrument covers goods that are or are to become fixtures on the Land
described herein and is to be filed for record in the records where conveyances of real estate are recorded.

Initials

Ellie Mae, Inc.                                    Page 1 of 5

06/01/2021 11:19 AM PST

eFiled & eRecorded
DATE: 6/15/2021
TIME: 2:40 PM
DEED BOOK: 02392
PAGE: 00431

2. The Home was built in compliance with the federal Manufactured Home Construction and Safety Standards Act.

3. If the Homeowner is the first retail buyer of the Home, Homeowner is in receipt of (I) the manufacturer's warranty for the Home, (II) the consumer manual for the Home, (III) the Insulation Disclosure for the Home, and (IV) the formaldehyde health notice for the Home.

4. The Homeowner is in receipt of manufacturer's recommended maintenance program regarding the carpets and manufacturer's warranties covering the heating/cooling system, hot water heater, range, etc.

5. The Home is or will be located at the following "Property Address":
10 White Oak Dr, Ellijay

Gilmer, GA 30540

(Street or Route, City)
(County) (State, Zip Code)

6. The legal description of the Property Address ("Land") is typed below or please see attached legal description.
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A";

7. The Homeowner is the owner of the Land or, if not the owner of the Land, is in possession of the real property pursuant to a lease in recordable form, and the consent of the lessor is attached to this Affidavit.

8. The Home is or shall be anchored to the Land by attachment to a permanent foundation, constructed in accordance with applicable state and local building codes and manufacturer's specifications in a manner sufficient to validate any applicable manufacturer's warranty, and permanently connected to appropriate residential utilities (e.g., water, gas, electricity, sewer) ("Permanently Affixed"). The Homeowner intends that the Home be an immoveable fixture and a permanent improvement to the Land.

9. The Home shall be assessed and taxed as an improvement to the Land. The Homeowner understands that if the Lender does not escrow for these taxes, that the Homeowner will be responsible for payment of such taxes.

ATTENTION COUNTY CLERK: This instrument covers goods that are or are to become fixtures on the Land described herein and is to be filed for record in the records where conveyances of real estate are recorded.

Initials: _____

Ellie Mae, Inc.                     Page 2 of 5

06/01/2021 11:19 AM PST

eFiled & eRecorded
DATE: 6/15/2021
TIME: 2:40 PM
DEED BOOK: 02392
PAGE: 00432

10. The Home is subject to the following security interests (each, a "Security Interest"):

Homestar Financial Corp
Name of Lienholder

Name of Lienholder

Address:
332 Washington St NW
Gainesville, GA 30501

Address:

Original Principal
Amount Secured: $ 216,015.00

Original Principal
Amount Secured: $

11. Homeowner agrees that as of today, or if the Home is not yet located at the Property Address, upon the delivery of the Home to the Property Address:

(a) All permits required by governmental authorities have been obtained;

(b) The foundation system for the Home was designed by an engineer to meet the soil conditions of the Land. All foundations are constructed in accordance with applicable state and local building codes, and manufacturer's specifications in a manner sufficient to validate any applicable manufacturer's warranty;

(c) If piers are used for the Home, they will be placed where recommended by the Home manufacturer;

(d) The wheels, axles, towbar or hitch were removed when the Home was placed on the Property Address; and

(e) The Home is (i) Permanently Affixed to a foundation, (ii) has the characteristics of site-built housing, and (iii) is part of the Land.

12. If the Homeowner is the owner of the Land, any conveyance or financing of the Home and the Land shall be a single transaction under applicable state law.

13. Other than those disclosed in this Affidavit, the Homeowner is not aware of (i) any other claim, lien or encumbrance affecting the Home, (ii) any facts or information known to the Homeowner that could reasonably affect the validity of the title of the Home or the existence or non-existence of security interests in it.

14. The Homeowner hereby initials one of the following choices, as it applies to title to the Home:

☐ A. The Home is not covered by a certificate of title. The original manufacturer's certificate of origin, duly endorsed to the Homeowner, is attached to this Affidavit, or previously was recorded in the real property records of the jurisdiction where the Home is to be located.

☐ B. The Home is not covered by a certificate of title. After diligent search and inquiry, the Homeowner is unable to produce the original manufacturer's certificate of origin.

☒ C. The manufacturer's certificate of origin and/or certificate of title to the Home ☒ shall be  ☐ has been  eliminated as required by applicable law.

☐ D. The Home shall be covered by a certificate of title.

15. This Affidavit is executed by Homeowner pursuant to applicable state law.

ATTENTION COUNTY CLERK: This instrument covers goods that are or are to become fixtures on the Land described herein and is to be filed for record in the records where conveyances of real estate are recorded.

Initials: _____

Ellie Mae, Inc.                                     Page 3 of 5

06/01/2021 11:19 AM PST

eFiled & eRecorded
DATE: 6/15/2021
TIME: 2:40 PM
DEED BOOK: 02392
PAGE: 00433

This Affidavit is executed by Homeowner(s) and Lienholder(s) pursuant to applicable state law and shall be recorded in the real property records in the county in which the real property and manufactured home are located.

_____     6/2/21        (Seal)
ANNA ALICIA GENTRY                                                        DATE

_____
Unofficial Witness

_____
Notary Public,
GILMER County

ATTENTION COUNTY CLERK: This instrument covers goods that are or are to become fixtures on the Land described herein and is to be filed for record in the records where conveyances of real estate are recorded.

Initials: _____

Ellie Mae, Inc.                          Page 4 of 5



eFiled & eRecorded
DATE: 6/15/2021
TIME: 2:40 PM
DEED BOOK: 02392
PAGE: 00434

IN WITNESS WHEREOF, Lender, being duly sworn on oath, intends that the Home be and remain Permanently Affixed to the Land and that the Home be an immoveable fixture and not as personal property.

Homestar Financial Corp., a Corporation

Lender

Marlana Martin

By: Authorized Signature

STATE OF: _____

COUNTY OF: _____

) ) SS.:
)

On the 2nd day of June in the year 2021 before me, the undersigned, a Notary Public in and for said State, personally appeared _____

_____

_____

_____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/ their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

Notary Signature

Evan Gibson
Notary Printed Name

Notary Public; State of
Qualified in the County of
My Commission expires:

Official Seal:



ATTENTION COUNTY CLERK: This instrument covers goods that are or are to become fixtures on the Land described herein and is to be filed for record in the records where conveyances of real estate are recorded.

Initials: _____

Ellie Mae, Inc.                                    Page 5 of 5

06/01/2021 11:19 AM PST

eFiled & eRecorded
DATE: 6/15/2021
TIME: 2:40 PM
DEED BOOK: 02392
PAGE: 00435

# GEORGIA FORECLOSURE DISCLOSURE

Borrower(s):  Anna Alicia Gentry

Date:  June 2, 2021

Property Address:  10 White Oak Dr
                   Ellijay, GA, 30540

Lender:  Homestar Financial Corp.

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____   6/2/21
ANNA ALICIA GENTRY                                      DATE

_____
Unofficial Witness

_____
Notary Public,
GILMER County

Ellie Mae, Inc.



06/01/2021 11:19 AM PST

eFiled & eRecorded
DATE: 6/15/2021
TIME: 2:40 PM
DEED BOOK: 02392
PAGE: 00436



June 2, 2021

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

_____
Notary Public

_____
Closing Attorney

Ellie Mae, Inc.

06/01/2021 11:19 AM PST

Filed & eRecorded
DATE: 12/2/2022
TIME: 1:40 PM
DEED BOOK: 02563
PAGE: 00239
RECORDING FEES: $25.00

CLERK: Amy Johnson
Gilmer County, GA
NOTE: LD

When Recorded Return To:
Shellpoint Mortgage Servicing
C/O Nationwide Title Clearing, LLC
2100 Alt. 19 North
Palm Harbor, FL 34683

## ASSIGNMENT OF SECURITY DEED

**SEND ALL OTHER BORROWER OR LOAN RELATED CORRESPONDENCE TO: Shellpoint Mortgage Servicing, P.O. Box 10826, Greenville, SC 29603-0826, Toll-free Phone: (800) 365-7107**

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (''MERS''), AS GRANTEE, AS NOMINEE FOR HOMESTAR FINANCIAL CORP, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026)** by these presents does convey, grant, assign, transfer and set over the described Security Deed with all liens and any rights due or to become due thereon to **NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING, WHOSE ADDRESS IS 55 BEATTIE PLACE STE 110, MS#001, GREENVILLE, SC 29601, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Security Deed is executed by **ANNA ALICIA GENTRY** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS GRANTEE, AS NOMINEE FOR HOMESTAR FINANCIAL CORP, ITS SUCCESSORS AND ASSIGNS** and recorded in Deed **Book 02392 and Page 00416** in the office of the Clerk of the Superior Court of **GILMER** County, **Georgia**.

**IN WITNESS WHEREOF,** the undersigned has hereunto set its hand **this 02nd day of December in the year 2022.**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (''MERS''), AS GRANTEE, AS NOMINEE FOR HOMESTAR FINANCIAL CORP, ITS SUCCESSORS AND ASSIGNS**

By: _____
**CECELIA MANSFIELD**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

Signed and delivered on the date above and in the presence of:

_____
**ANGELA PAVAO**
**WITNESS**

STATE OF FLORIDA    COUNTY OF PINELLAS
Sworn to (or affirmed) and subscribed before me by means of [X] physical presence or [ ] online notarization on this 02nd day of December in the year 2022, by Cecelia Mansfield as VICE PRESIDENT for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (''MERS''), AS GRANTEE, AS NOMINEE FOR HOMESTAR FINANCIAL CORP, ITS SUCCESSORS AND ASSIGNS. He/she is personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument.

_____
**JULIE MARTENS**
**COMM EXPIRES: 5/22/2026**

JULIE MARTENS
Notary Public - State of Florida
Commission #
My Comm. Expires May 22, 2026
Bonded through National Notary Assn.

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| IN RE: | Case No. 24-21153-JRS |
| ANNA ALICIA BYINGTON AKA ANNA BYINGTON AKA ANNA A BYINGTON AKA ANNA GENTRY AKA ANNA ALICIA GENTRY AKA ANNA A GENTRY, | Chapter 13 |
| Debtor. | |

**CERTIFICATE OF SERVICE**

This is to certify that on this day I electronically filed the foregoing **Notice of Hearing and Motion for Relief from the Automatic Stay** using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

**The following parties have been served via e-mail**:

E. L. Clark                                             Nancy J. Whaley

I further certify that on this day I caused a copy of this document to be served via United States First Class Mail, with adequate postage prepaid on the following parties set forth below at the address shown for each.

Anna Alicia Byington
10 White Oak Drive
Ellijay, GA 30540

**I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Eric Smith, Bar No.: 347001
Attorney for Movant
Aldridge Pite, LLP
Six Piedmont Center
3525 Piedmont Road, N.E., Suite 700
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: esmith@aldridgepite.com